TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-00-00645-CV







Austin Independent School District, Appellant




v.




Maria Teresa Gutierrez, Individually and as Independent Administratrix of the Estate of 

Adriana Pamela Gutierrez, Deceased, Appellee






FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY


NO. 71,523-A, HONORABLE GUY S. HERMAN, JUDGE PRESIDING







 Immediately after disembarking from a school bus, eight-year-old Adriana Gutierrez
was struck and killed by a passing motorist. Appellee Maria Teresa Gutierrez, Adriana's mother,
filed suit against several defendants, including appellant, Austin Independent School District
("AISD"). Even though Gutierrez's pleadings alleged a cause of action against AISD pursuant to
the Texas Tort Claims Act, AISD filed a plea to the jurisdiction contending that its immunity from
suit deprived the trial court of subject-matter jurisdiction. The trial court denied AISD's plea to the
jurisdiction. AISD brings this interlocutory appeal from that denial. We will affirm.


THE CONTROVERSY


 On the afternoon of February 9, 1999, an AISD school bus driven by Barbarita Ruiz
stopped in the 2100 Block of Burton Drive in Austin to drop off eight-year-old Adriana and her
cousin, Raul. The school bus was parked across the street from Adriana's home, so the two children
had to cross Burton Drive. Ruiz honked the bus's horn to signal the children that it was safe to cross
the street. Raul went across safely, but as Adriana crossed the street she was hit by a third-party
vehicle. It was later determined that the driver of that vehicle was intoxicated. Adriana was taken
to Brackenridge Hospital where she died the following morning.

 In Gutierrez's pleadings, she argued that AISD "was negligent in the operation or use
of a motor-driven vehicle" and was liable pursuant to section 101.021(1)(A) of the Texas Tort
Claims Act ("the Act"). (1) Gutierrez claims that through specific actions taken by the bus driver
involving negligent use or operation of the school bus, AISD waived its immunity under the Act. 
The actions described by Gutierrez were (1) the failure to use safe and appropriate procedures during
the transportation process, which includes the unloading of school children, and (2) the use of the
horn to signal Adriana to cross when it was not safe for her to do so.

 In response to Gutierrez's pleadings, AISD filed a plea to the jurisdiction and a
motion for summary judgment. In the district's plea to the jurisdiction, AISD contended that it was
immune from suit and its immunity was not waived by the bus driver's actions. AISD alleged that
the bus driver's actions did not, through the use or operation of a motor-driven vehicle as case law
has defined those terms, cause Adriana's death. The district argued that any actions taken by the
driver as alleged by Gutierrez involved only supervision or control of children (or the failure
thereof), which does not waive the school district's immunity from suit. AISD concluded that as
there was no waiver of immunity from suit, the trial court lacked subject-matter jurisdiction.

 The trial court denied both the plea to the jurisdiction and the motion for summary
judgment. AISD filed an interlocutory appeal from the denial of the plea to the jurisdiction. (2)


SCOPE OF REVIEW


 This is an interlocutory appeal from the denial of a plea to the jurisdiction. AISD
contends that it is immune from suit and that Gutierrez is barred from bringing an action against the
school district. (3) Therefore, the only issue before this Court is whether the trial court has subject-matter jurisdiction over Gutierrez's cause of action. We do not address the denial of the motion for
summary judgment as it is not before this Court.

 The Texas Supreme Court recently discussed pleas to the jurisdiction in the context
of the Texas Tort Claims Act. See Texas Dep't of Criminal Justice v. Miller, 44 Tex. Sup. Ct. J. 963
(June 21, 2001). The court found that because the Act defines a narrow set of circumstances in
which a government entity waives sovereign immunity, an appellate court must first determine the
scope of the waiver granted by the terms of the Act, and second examine the specific facts of the case
to determine if they fall within the Act's scope. Id. at 964 (citing Kerrville State Hosp. v. Clark, 923
S.W.2d 582, 584 (Tex. 1996), for the first step). (4) To determine the scope of the waiver we will
examine the applicable sections of the Act with an emphasis on the terms "use" and "operation" as
they relate to a motor-driven vehicle. In examining the facts of the case, we take the factual
allegations of the plaintiff's petition as true, as required for a plea to the jurisdiction. Brannon v.
Pacific Employers Ins. Co., 224 S.W.2d 466, 469 (Tex. 1949).

 At this jurisdictional stage of the proceedings, we are not permitted to address the
merits of this case. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). Gutierrez need
not prove that the bus driver's actions did constitute a "use" or "operation" of a motor-driven vehicle
for this Court to affirm the trial court's order. However, for this Court to find that AISD has not
waived its immunity from suit, AISD must prove as a matter of law that the driver's actions did not
constitute "use" or "operation" of a motor vehicle.


DISCUSSION


 School districts are immune from liability for personal injuries under the Texas Tort
Claims Act, unless the injury arises from a governmental employee's operation or use of a motor-driven vehicle. See Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021(1)(A), .051 (West 1997);
LeLeaux v. Hamshire-Fannett Indep. Sch. Dist., 835 S.W.2d 49, 51 (Tex. 1992). To establish a
waiver of immunity from suit, a plaintiff need only allege that a government motor vehicle was used
or operated, and that there was a nexus between the injury and the operation or use of the motor
vehicle by a government employee. Martinez v. Via Metro. Transit Auth., 38 S.W.3d 173, 176 (Tex.
App.--San Antonio 2000, no pet.); see also LeLeaux, 835 S.W.2d at 51.

 The first step in determining if there was a waiver of immunity is to decide if there
was a use or operation of a motor vehicle. The Texas Tort Claims Act does not define the terms
"use" or "operation," so we apply their common and ordinary meanings. Satterfield v. Satterfield,
448 S.W.2d 456, 459 (Tex. 1969). "Use" is defined as "to put or bring into action or service; to
employ for or apply to a given purpose." Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg,
766 S.W.2d 208, 211 (Tex. 1989) (quoting Beggs v. Texas Dep't of Mental Health & Mental
Retardation, 496 S.W.2d 252, 254 (Tex. Civ. App.--San Antonio 1973, writ ref'd)). Gutierrez
points to a broad reading of the term "use" by the Texas Supreme Court. See Mid-Century Ins. Co.
v. Lindsey, 997 S.W.2d 153, 164 (Tex. 1999) (holding in liability insurance contract case that
accidental discharge of gun mounted over rear window of parked pickup truck by child while
climbing through rear window is "use" of motor vehicle as required by policy). The definition of
"operation" is "a doing or performing of practical work." Mount Pleasant, 766 S.W.2d at 211 (citing
Jackson v. City of Corpus Christi, 484 S.W.2d 806, 809 (Tex. Civ. App.--Corpus Christi 1972, writ
ref'd n.r.e.)).

 In general, when applying the term "use" or "operation" in school bus cases, appellate
courts have examined whether the employee's act involved actual use or operation of the vehicle,
rather than the supervision of children. Ransom v. Center for Health Care Servs., 2 S.W.3d 643, 645
(Tex. App.--San Antonio 1999, pet. denied); Goston v. Hutchinson, 853 S.W.2d 729, 733 (Tex.
App.--Houston [1st Dist.] 1993, no writ); Estate of Garza v. McAllen Indep. Sch. Dist., 613 S.W.2d
526, 528 (Tex. Civ. App.--Beaumont 1981, writ ref'd n.r.e.). If the employee's act involved only
supervision or control, immunity has not been waived, even if the act took place on or near the motor
vehicle. Goston, 853 S.W.2d at 733; see also Estate of Garza, 613 S.W.2d at 528.

 The second step requires an understanding of the nexus between the injury and the
use or operation of the vehicle that is required. The Texas Supreme Court determined in LeLeaux
that the statutory phrase "arises from" requires that there be some connection between the injury and
the act of using or operating the vehicle. 835 S.W.2d at 51. The school employee's negligent act
in using or operating the vehicle must have played some role in causing the injury. See id.

 In the present case, AISD argues that it is immune from suit and that the actions of
the bus driver did not result in a waiver of immunity. AISD contends that the procedures used by
the bus driver when unloading passengers, including honking the horn, do not constitute a use or
operation of the vehicle. Instead, AISD claims that these procedures are supervisory in nature and
are analogous to the actions taken by an individual supervising children at a crosswalk. 

 On the other hand, Gutierrez contends that the only "use" of a school bus is to
transport students and the process of transporting them does not end until the children have safely
crossed the street. Gutierrez specifically points to the bus driver's use of the horn to signal Adriana
that it was safe to cross the street as evidence that this use or operation of the motor vehicle
contributed to the accident. Gutierrez argues that this means of signaling students was an
inappropriate use of the vehicle. For support, she cites the training manual for bus drivers, which
describes a preferred method for ensuring students' safety when crossing the street. Gutierrez argues
that although Martinez's drunk driving was a factor contributing to the accident, the incident may
have been prevented if the bus driver had followed standard procedures as described in the bus driver
training manual. Instead, the bus driver honked the horn, confusing both Adriana and the other
drivers.

 The parties have cited us to most of the Texas school bus cases in which injured
students attempted to sue the school district on the theory that immunity was waived through the use
or operation of a motor vehicle. Our review, however, reveals that most of these cases are clearly
distinguishable. (5) We will not discuss cases in which the injury occurred on the bus itself or where
the injury occurred before a bus arrived at the scene. See LeLeaux, 851 S.W.2d at. 50-51 (resolving
case in which student hit her head jumping through emergency door on parked and unattended school
bus); Luna v. Harlingen Consol. Indep. Sch. Dist., 821 S.W.2d 442, 443 (Tex. App.--Corpus Christi
1991, writ denied) (resolving case in which children were hit by third party's vehicle while awaiting
arrival of school bus at poorly planned location); Heyer v. North E. Indep. Sch. Dist., 730 S.W.2d
130, 130-31 (Tex. App.--San Antonio 1987, writ ref'd n.r.e.) (resolving case in which driver lost
control of private vehicle and hit students waiting at bus stop on school grounds); Estate of Garza,
613 S.W.2d at 527 (resolving case in which student was stabbed to death by third party while riding
school bus). We will discuss only those cases in which students were hit by another car after they
disembarked from a school bus.

 One of the first school bus cases to discuss a school district's waiver of immunity
when a student was injured was Hitchcock v. Garvin, 738 S.W.2d 34 (Tex. App.--Dallas 1987, no
writ). A student exited the bus and was crossing the street when a car hit her. Id. at 35. The
plaintiffs alleged that the bus driver did not activate his flashers to signal that students were exiting
the bus, which both the bus driver training guide and Texas traffic statutes required. Id. at 36. The
Dallas court held that the issue of whether the driver had activated his flashers was a question of fact
and remanded the case to the trial court for a trial on the merits. Id. at 37-38. In addition, the court
stated that if the driver had failed to operate his flashers it would constitute an "act or omission
arising from the operation or use" of a motor vehicle which waives immunity. (6) Id. at 37.

 In Mount Pleasant, the school bus left the scene before the accident occurred. Mount
Pleasant Indep. Sch. Dist. v. Estate of Lindburg, 766 S.W.2d 208, 210 (Tex. 1989). Two students
were delivered safely to a bus stop on the east side of the highway. One student crossed the highway
without incident. The bus driver waited for the seven-year-old girl to cross, but left when she failed
to do so. Another driver also tried to signal the girl to cross, but she remained on the east side of the
highway. Once the bus was approximately 200 yards from the girl, she attempted to cross the
highway; a car hit and killed her. The Texas Supreme Court did not discuss whether the accident
arose from the operation or use of a motor vehicle, but instead found that the district had not waived
its immunity because the bus driver acted in the manner expected of a reasonably prudent person in
the same position. Id. at 213. The court focused its attention on the point that school bus drivers are
not common carriers and should not be held to a heightened standard of care. Id.

 A second case in which a student was hit by a car after the school bus left the scene
is Contreras v. Lufkin Independent School District, 810 S.W.2d 23, 24 (Tex. App.--Beaumont 1991,
writ denied). In that case, a six-year-old girl's proper bus stop was located across the street from her
home. The bus erroneously delivered her to a stop around the corner. The school bus had left the
scene when the girl attempted to cross the street and was struck by a car. The court found that
dropping the girl off at the wrong stop did arise from the operation and use of the motor vehicle, and
therefore immunity was waived. Id. at 26.

 The Contreras decision, however, was criticized in Goston v. Hutchison, 853 S.W.2d
729, 733 (Tex. App.--Houston [1st Dist.] 1993, no writ). In that case, a bus driver allowed two
students to exit the bus at an undesignated stop at their request. They got into a car driven by a
friend and were involved in a collision. One of the students was killed and the other was seriously
injured. The Houston court decided that leaving a student at the wrong stop was a failure to properly
supervise the student and did not involve the use or operation of a motor vehicle. Id. at 734. Thus,
the court concluded that the bus driver's actions did not waive immunity. Id.

 The final case is Ransom v. Center for Health Care Services, 2 S.W.3d 643 (Tex.
App.--San Antonio 1999, pet. denied). Ransom is not a school bus case, but it does involve a
governmental entity transporting an individual, and the San Antonio court relied on previous school
bus cases in making its decision. Ransom, a mentally retarded man, was delivered to the bus stop
across the street from his group home at three o'clock in the morning. The driver waited for Ransom
to cross the street, but when he did not, the driver left the scene. When Ransom attempted to cross
the street, a drunk driver hit him. The court followed the rationale in Goston and held that the
plaintiff's suit was barred by sovereign immunity. Id. at 645. The court decided that any action
taken by the driver was supervisory rather than a use or operation of the motor vehicle. Id.

 The present case has facts that are unique when compared with the above cases. In
both Contreras and Goston, the bus driver dropped the student off at the wrong stop and then left
the scene. The appellate courts in those cases differed regarding whether the drivers' actions were
supervisory or were an aspect of a use or operation of the motor vehicle. In both Mount Pleasant
and Ransom, the injured individual was left at the correct stop but delayed crossing the street, and
the bus left. All four of these cases are factually distinguishable from the present case because
Adriana's bus was still at the scene when the incident occurred. It is much easier to find there was
not "use" or "operation" when there was no bus present at the scene to use or operate. Even with
this distinction, Contreras provides authority for the argument that use or operation can be found
even when the bus is no longer present if the bus driver took affirmative action (leaving the child at
the wrong stop) that may have contributed to the accident.

 The case closest to the facts in this cause is Hitchcock from the Dallas court of
appeals. See 738 S.W.2d at 34. In Hitchcock, the bus driver allegedly failed to take action that could
have helped the student cross the street safely, in that he did not turn on his flashing lights. In this
case, the driver attempted to take the affirmative action of honking the horn to help the student cross
the street. See id. at 36. In both cases, the decisions made by the drivers (either to act or not to act)
were contrary to their training. In reviewing all of the other appellate cases, we find that Hitchcock
is the most analogous to the current cause. Its holding, that the bus driver's action constituted a use
or operation of a motor vehicle, is highly persuasive and applicable to this case.

 AISD has an extremely heavy burden in this appeal from a denial of its plea to the
jurisdiction. AISD must demonstrate from the body of appellate case law that the factual allegations
contained in Gutierrez's petition cannot, as a matter of law, constitute an operation or use of a motor
vehicle. After reviewing the cases cited by AISD, we hold that the school district has not met this
burden. Most of the cases upon which AISD relies involve situations in which the school bus was
not present at the scene when the accident occurred, or in which the accident occurred on the bus
itself, but did not result from actions taken by the bus driver. It is easy to argue that those cases
involved supervisory actions rather than "use" or "operation" of a motor vehicle by a governmental
employee. Here, the bus was present at the time of the accident, and the bus driver took the
affirmative action of honking the horn (7) which may have contributed to the accident. The cases cited
by the parties would seem to establish that this constitutes a "use." See, e.g., Hitchcock, 738 S.W.2d
at 34. This case may be even stronger than Hitchcock where the bus driver took no action, because
the driver of Adriana's bus took affirmative action. Cases relied on by AISD focus on the fact that
the bus was not present at the time of the accident to determine that the bus driver's actions were
supervision rather than "use" or "operation." Here, the bus's presence at the accident scene
distinguishes it from those cases. Based on these facts, the court was correct in denying AISD's plea
to the jurisdiction. 


CONCLUSION


 In conclusion, we hold that AISD has not demonstrated as a matter of law that the bus
driver's honking of the horn did not constitute "use" or "operation" of a motor vehicle. We affirm
the judgment of the trial court.



 

 Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed: August 30, 2001

Publish

1. Section 101.021of the Act reads:


 § 101.021. Governmental Liability


A governmental unit in the state is liable for:


(1) property damage, personal injury, and death proximately caused by the wrongful
act or omission or the negligence of an employee acting within his scope of
employment if:



 the property damage, personal injury, or death arises from the operation or use
of a motor-driven vehicle or motor-driven equipment . . . .



Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1)(A) (West 1997) (emphasis added); see also id.
§ 101.051.
2. A party may appeal from an interlocutory order only under certain circumstances. See id.
§ 51.014 (West Supp. 2001). These include the denial of a plea to the jurisdiction by a government
entity. Id. § 51.014(8). However, a party is not allowed to appeal an interlocutory order denying
summary judgment, unless it is based on the assertion of immunity by an individual officer or
employee of the state, or unless the claim involves a member of the print or electronic media. Id.
§ 51.014(5), (6). As neither of these circumstances were present in this case, AISD is unable to
appeal the denial of the motion for summary judgment. Therefore, the denial of AISD's motion for
summary judgment will not be considered by this Court. See Novak v. Stevens, 596 S.W.2d 848, 849
(Tex. 1980).
3. A governmental entity may claim immunity from suit or immunity from liability. Texas Dep't
of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999). Immunity from suit completely bars an action
against the state unless the state waives its immunity and consents to suit. Id. This is a jurisdictional
issue because, without the state's consent, a trial court lacks jurisdiction to hear the case. Id. 
Immunity from liability protects a government entity from judgment, but does not prevent the case
from going to trial. Id. This is an affirmative defense that must be pleaded, rather than an issue to
be raised in a plea to the jurisdiction. Id. At this stage of the proceeding, the issue of immunity from
liability is not before us. The denial of AISD's plea to the jurisdiction only raises the issue of
immunity from suit. 
4. The statute reads as follows:


 § 101.025. Waiver of Governmental Immunity; Permission to Sue



 Sovereign immunity to suit is waived and abolished to the extent of liability created by
this chapter. 

 A person having a claim under this chapter may sue a governmental unit for damages
allowed by this chapter. 



Tex. Civ. Prac. & Rem. Code Ann. § 101.025 (West 1997). 
5. We note at the outset that none of the cases cited by either party involve pleas to the
jurisdiction. Most of the case law regarding the parameters of use of a motor vehicle have arisen in
a summary judgment context.
6. Appellant seeks to distinguish Hitchcock on the basis that failure to activate the flashers was
a violation of a statute and therefore negligence per se. A review of the case demonstrates that the
court's decision was not based on this rationale. Hitchcock v. Garvin, 738 S.W.2d 34, 37 (Tex.
App.--Dallas 1987, no writ). 
7. We take as true, as we must for jurisdictional purposes, Gutierrez's contention that the bus
driver honked the horn to signal Adriana to cross the street. Brannon v. Pacific Employers Ins. Co.,
224 S.W.2d 466, 469 (Tex. 1949).