Harold WHITLEY, Appellant,

v.

DALLAS AREA RAPID TRANSIT
d/b/a DART, Appellee.

No. 05–00–01167–CV.

Court of Appeals of Texas,
Dallas.

Dec. 18, 2001.

Rehearing Overruled Jan. 22, 2002.

John P. Knouse, Knouse & Knouse, Dallas, for appellant.

Hyattye O. Simmons, DART—Legal Department, Dallas, for appellee.

Before Justices KINKEADE, WRIGHT, and FITZGERALD.

## OPINION

Opinion by Justice KINKEADE.

Harold Whitley appeals the trial court's granting of Dallas Area Rapid Transit's ("DART") plea to the jurisdiction based on sovereign immunity, arising from Whitley's claims that the negligence of a DART bus driver proximately caused him injuries. In its plea to the jurisdiction, DART claimed Whitley's pleadings failed to raise a fact issue as to whether the injury was caused by the use of the motor vehicle. In his sole issue on appeal, Whitley contends his pleadings were sufficient to confer jurisdiction on the trial court. Because we conclude Whitley's pleadings raised a justiciable fact question as to waiver of immunity, we conclude the trial court did have subject-matter jurisdiction over Whitley's cause of action. Accordingly, we reverse the trial court's judgment and remand the case for further proceedings.

### Factual Background

Harold Whitley has cerebral palsy, which affects his ability to speak, impairs his movement, and causes him physical pain. He is a regular DART bus passenger and carries a special pass that identifies him as disabled. On September 22, 1997, Whitley was a passenger on DART

bus 475 and was sitting in the seat directly behind the driver. According to Whitley, a woman boarded the bus after him and began causing some disturbance. Initially, the woman verbally harassed Whitley, but when he asked her to move to another seat, the woman pulled out a razor blade box cutter from her purse and threatened him with it. Although other passengers succeeded in moving the woman to the back of the bus, she later ran toward Whitley with a knife, again threatening to kill him.

The bus driver, in an apparent attempt to defuse the situation, stopped the bus far from Whitley's stop and ordered Whitley to get off the bus "for a minute" in an area unfamiliar to Whitley. The bus driver promised Whitley he would return in the bus in a few minutes to pick him up. When Whitley got off, the woman on the bus loudly claimed, "I'm fixing to get off, I'm going to kill that motherfucker." Approximately two blocks later, she got off at her stop, still loudly announcing her intent to kill Whitley. The bus driver chose not to return for Whitley as promised. Carrying through with her threats, the woman gathered her son and a number of his friends, who found Whitley where he was still waiting for the bus to return and severely beat him with iron pipes, boards, and ropes, leaving him for dead. The attack left Whitley with multiple injuries, including facial fractures and a bilateral orbital fracture. Whitley required emergency medical treatment and several surgeries during a ten-day stay at Parkland Hospital.

### Plea to the Jurisdiction

 The trial court granted DART's plea to the jurisdiction, dismissing Whitley's claim in its entirety. A plea to the jurisdiction is a dilatory plea; its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). The plea challenges the trial court's authority to determine the subject matter of a pleaded cause of action. *Tex. State Employees Union/CWA Local 6184 A.F.L.C.I.O. v. Tex. Workforce Comm'n*, 16 S.W.3d 61, 65 (Tex.App.—Austin 2000, no pet.); *State v. Benavides*, 772 S.W.2d 271, 273 (Tex. App.—Corpus Christi 1989, writ denied). The existence of subject-matter jurisdiction is a question of law; thus, we review de novo the trial court's ruling on a plea to the jurisdiction. *Tex. State Employees Union*, 16 S.W.3d at 65.

 The plaintiff has the burden to allege facts affirmatively demonstrating that the trial court has subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). A district court is required to liberally construe the allegations in favor of jurisdiction unless the face of the petition affirmatively demonstrates a lack of jurisdiction. *Peek v. Equip. Serv. Co.*, 779 S.W.2d 802, 804 (Tex.1989). Dismissing a cause of action for lack of subject matter jurisdiction is proper only when it is impossible for the plaintiff's petition to confer jurisdiction on the trial court. *TRST Corpus, Inc. v. Fin. Ctr.*, 9 S.W.3d 316, 320 (Tex.App.—Houston [14th Dist.] 1999, pet. denied).

 In our review of the trial court's order dismissing a cause for want of jurisdiction, we must "construe the pleadings in favor of the plaintiff and look to the pleader's intent." *Tex. Air Control Bd.*, 852 S.W.2d at 446. Our task is to determine whether Whitley pleaded a claim that appropriately invoked the trial court's jurisdiction.

## Sovereign Immunity

■ In Texas, a governmental unit is immune from tort liability unless the Legislature has waived immunity. *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998). Whitley's petition cites section 101.021 of the Texas Tort Claims Act (the "Act"). The Act provides that sovereign immunity is waived—and a governmental unit may be sued—for personal injuries proximately caused by the negligence of an employee, acting within his scope of employment, if those injuries arise from the operation or use of a motor vehicle. Tex. Civ. Prac. & Rem.Code Ann. § 101.021(1) (Vernon Supp.2001). Whitley's petition makes reference to each of these elements. He has sufficiently identified the waiver of immunity upon which he relies in this suit against DART.

### Section 101.021(1)

The issue before this Court is whether Whitley's factual pleadings, construed in his favor, indicate that Whitley could state a colorable claim under section 101.021(1) of the Act. There is no dispute as to DART's status as a governmental unit within the meaning of the Act or the bus driver's status as an employee of DART, acting within the course and scope of his employment as a bus driver. The specific question for us, then, is whether Whitley's injuries could have arisen from the operation or use of a DART bus. While the term "use" is not defined in the Act, the Texas Supreme Court has consistently held it to mean "put into action or service; to employ or apply to a given purpose." *Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex. 1994) (quoting *LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex.1992)).

Several courts have addressed the question of whether use or operation of a motor vehicle can be found in cases where passengers have been injured after being let off a bus. DART relies on one of these cases, *Ransom v. Center for Health Care Services*, 2 S.W.3d 643 (Tex.App–San Antonio 1999, pet. denied), to argue that Whitley's injuries did not arise from the use or operation of the bus. In *Ransom*, the San Antonio court determined the bus driver's decision to let a disabled passenger off across the street from the home where he lived amounted to a failure to properly supervise, and not negligent use or misuse of the bus itself. *See id.* at 645. We do not agree with DART that *Ransom* controls this case, and conclude the facts of this case are more analogous to bus cases where a fact issue existed as to use or operation of the bus.

In *Contreras v. Lufkin Independent School District*, 810 S.W.2d 23, 24–25 (Tex. App.—Beaumont 1991, writ denied), a case relied on by Whitley, the Beaumont Court of Appeals found a fact issue as to use or operation of a motor vehicle when a six-year old student was hit and killed by a car after being let off the school bus at the wrong stop. Although *Contreras* has been criticized, a recent opinion, *Austin Independent School District v. Gutierrez*, 54 S.W.3d 860 (Tex.App.—Austin 2001, pet. filed), discusses several bus cases, including *Contreras* and *Ransom*, using an applicable analysis to distinguish the types of cases where use or operation is a fact issue from those where no fact issue exists.

In *Gutierrez*, an Austin Independent School District (AISD) bus driver dropped an eight-year-old child across the street from her home, then honked the horn to indicate it was safe for her to cross the street. While crossing the street, she was hit and killed by a drunk driver. *Id.* at 861. The court determined that because the bus driver took the affirmative action of honking the horn, AISD could not estab-

lish there was no "use" or "operation" of the motor vehicle. *Id.* at 867. For purposes of its analysis, the *Gutierrez* court grouped the bus cases into two categories, those in which the bus left the scene before the accident and those in which the bus was present when the accident occurred. Acknowledging that it is "easier to find there was not 'use' or 'operation' when there was no bus present at the scene to use or operate," the court stated that "*Contreras* provides authority for the argument that use or operation can be found even when the bus is no longer present if the bus driver took affirmative action (leaving the child at the wrong stop) that may have contributed to the accident." *Id.* at 866. The court determined that use or operation could be found in cases where there is evidence the bus driver took some affirmative action that may have contributed to the accident. *See id.* The court distinguished cases like *Ransom* where the bus driver simply let someone off at his stop and was no longer present at the time of the accident, acknowledging in that type of case, the bus driver's actions could be supervision rather than "use" or "operation." *See id.*

While expressing no opinion as to the *Gutierrez* court's entire analysis or the holding in *Contreras,* we agree with the principle in *Gutierrez* that when a bus driver takes affirmative action involving the use of the bus that may have contributed to the injury, there may be use or operation of a motor vehicle. Construing the pleadings in this case in favor of the plaintiff, as we are required to do, the bus driver took affirmative actions involving the use or operation of the bus that contributed to Whitley's injuries. This is not a case where a bus driver simply let a passenger off at the wrong stop. Rather, the bus driver stopped the bus and, in an apparent attempt to resolve a disturbance on the bus, forced Whitley, a person the bus driver knew to be disabled, to get off the bus far from his own stop in an unfamiliar area, and promised to turn around and pick him up a few minutes later. Then, two blocks down the street, the driver let off the angry woman who, in front of the driver, had threatened Whitley's life with a knife and claimed she would kill Whitley when she got off the bus. The bus driver then chose not to drive the bus around the block and pick up Whitley as promised, even after passengers warned him that Whitley was in danger. Following through with her threats, the woman gathered her son and his friends, found Whitley where he was still waiting for the bus to come back for him, and beat him so severely with pipes and boards that he spent ten days in the hospital with multiple serious injuries. Whitley's allegations indicate that the bus driver, acting with disregard for Whitley's safety, used the bus to place Whitley in a dangerous situation, and Whitley was injured as a result.

We conclude this case is similar to *Hitchcock v. Garvin,* 738 S.W.2d 34 (Tex. App.—Dallas 1987, no writ), where the bus driver failed to activate the flashers resulting in a school child being injured after getting off a bus. In this case, as in *Hitchcock,* the bus driver took affirmative action, involving use or operation of the bus, that contributed to the injury. Specifically, the driver used the bus when he stopped it to force Whitley out on the street, then dropped the woman, who had threatened Whitley in front of the bus driver, within a few blocks of where she knew Whitley had gotten off the bus, and then decided not to turn the bus around to pick Whitley up as promised. Because the driver chose to force Whitley off the bus and then dropped his attacker off near where Whitley was waiting, and decided to go on without returning to pick up Whitley as promised, there is a fact issue as to

whether the bus driver took affirmative action involving the use of the bus that contributed to Whitley's injuries. *See Gutierrez,* 54 S.W.3d at 866.

We reverse the trial court's granting of DART's plea to the jurisdiction and remand the case to the trial court for further proceedings.