

# IN THE
# TENTH COURT OF APPEALS

_____

### No. 10-21-00070-CV

**KOBY REZAC,**

**Appellant**

**v.**

**NAVARRO COLLEGE,**

**Appellee**


_____


### From the 40th District Court
### Ellis County, Texas
### Trial Court No. 103880

_____

## OPINION

_____

Koby Rezac appeals from a judgment that granted Navarro College's plea to the

jurisdiction and dismissed his claims against the college with prejudice.  Rezac complains

that the trial court erred by granting the plea to the jurisdiction and dismissing his claims

with prejudice because:  (1) Rezac's injury was caused by the negligent use or operation

of a fire truck by an employee of Navarro College; (2) Rezac had not been allowed to

conduct discovery and the issue in question was a fact issue, the plea was determined solely on the affidavits of interested witnesses, and Rezac provided sufficient evidence to create a fact issue; (3) Rezac should have been allowed to replead to include an additional theory of liability prior to the ruling on the plea; and (4) the objections to Rezac's affidavit were improperly sustained by the trial court. Because we find no reversible error, we affirm the judgment of the trial court.

BACKGROUND FACTS

Rezac was a student at the college's fire academy. The college conducted a family night for students to demonstrate firefighting techniques they had learned. A fire truck was used during the demonstration. After the demonstration, the students posed for a photograph. Rezac was on the end of the row of students. An employee of the college sprayed the students with water from a hose connected to the fire truck. Rezac was hit directly in the side of the head with the water spray, knocking him over. Rezac began having trouble hearing and seeing, and later that night was bleeding from his ear. Rezac went to the emergency room suffering from concussion-like symptoms and was diagnosed with a ruptured eardrum, which required surgery to repair.

Rezac filed this action against Navarro College alleging that the use of the fire hose as a component of a motor-driven vehicle resulted in his injuries. The college filed a plea to the jurisdiction. The college attached affidavits to its plea from three instructors at the fire academy, including the instructor that had sprayed the water that caused the injury.

The affidavits explained the operation of the fire truck and the hoses, and denied Rezac's allegations that the fire truck's engine, which also runs the water pump, was on when the water was sprayed from the hose.

Rezac filed a response to the plea to the jurisdiction and attached an affidavit by him that alleged that one of the instructors had "knelt down on a fully charged 2 ½ inch hose line" to Rezac's left, and that the instructor hit Rezac with water from the hose directly on the left side of his head with such force that it knocked Rezac to the ground. Rezac further alleged that the same hose and highly pressurized water was used by Rezac within 30 minutes before the incident during the demonstration and that "[t]he force of the pumped water that hit me was the same force of pumped water from my demonstration." Rezac stated that he asked the instructor why he did that and alleged that the instructor said, "Sorry, I didn't know the pressure was up that high."[1] Lastly, Rezac stated that "To my knowledge, the only water pump at this location was the pump operated via the fire truck engine." In the response, Rezac alternatively requested that the plea to the jurisdiction be stayed pending certain discovery relating to jurisdictional facts and sought leave to replead in the event the trial court determined that the alleged facts were insufficient.

The college filed objections to the three statements of Rezac quoted above, arguing

---

[1] The instructor who Rezac contended made this statement denied that he made the statement in his affidavit in support of the plea to the jurisdiction.

that each of them lacked personal knowledge of Rezac and were conclusory. The college did not object to the alleged statement by the instructor that he did not know the pressure was that high. The college also filed a reply to Rezac's response to the plea, arguing that discovery was not necessary and that their plea conclusively established that the instructor's use of the hose that was connected to a fire truck whose engine and pump were off did not constitute the use or operation of a motor vehicle.

PLEA TO THE JURISDICTION STANDARD OF REVIEW

Because Rezac asserted a tort claim against Navarro College, a Texas junior college district, Rezac must overcome the presumption of governmental immunity of the college. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57-58 (Tex. 2011). Rezac can do so only by demonstrating that the legislature, as the branch of government constitutionally empowered to manage the State's financial affairs, has waived immunity by statute. *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997). Without a waiver of immunity, the court lacks jurisdiction to proceed. Accordingly, if a Texas Tort Claims Act (TTCA) plaintiff cannot satisfy "the burden to affirmatively demonstrate the trial court's jurisdiction" by showing that the claim falls within a statutory waiver of immunity, the court must dismiss the suit. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019); *see also Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Waivers of governmental immunity "must be clear and unambiguous" and any purported waiver of immunity must be strictly construed in favor of retaining immunity. *PHI, Inc.*

*v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 303 (Tex. 2019).

Immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Whether a court has subject matter jurisdiction and whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction are questions of law. *Id.* at 226. Therefore, we review de novo a trial court's ruling on a jurisdictional plea. *Id.*

When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction. *Id*. We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id*. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Id*. at 226-27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id*. at 227.

However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider, as the trial court is required to do, relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Id*. When the consideration of a trial court's subject matter jurisdiction requires the examination of evidence, the trial

court exercises its discretion in deciding whether the jurisdictional determination should be made at a preliminary hearing or await a fuller development of the case, mindful that this determination must be made as soon as practicable. *Id*. Then, in a case in which the jurisdictional challenge implicates the merits of the plaintiff's cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *Id*. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Id.* at 227-28. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

This standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c). *Id*. The standard allows the state in a timely manner to extricate itself from litigation if it is truly immune. *Id.* After the state asserts and supports with evidence that the trial court lacks subject matter jurisdiction, the plaintiff is required, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue. *Id*. Like a summary judgment, a plea to the jurisdiction may be based on uncontroverted testimonial evidence of an interested witness if the evidence is clear, positive and direct, otherwise credible and free from contradiction, and could have been readily controverted. TEX. R. CIV. P. 166a(c); *City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d

695, 698 (Tex. App.—Austin 2005, no pet.).

When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant. *Miranda*, 133 S.W.3d at 228. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

**WAIVER**

The starting point under the Tort Claims Act is always the same: a presumption against any waiver until the plaintiff establishes otherwise. *Rattray v. City of Brownsville*, 662 S.W.3d 860, 865 (Tex. 2023). To do so, a plaintiff may invoke various provisions in Subchapter B of the Act that affirmatively describe when immunity is waived. Without such a provision, no court is empowered to hear tort cases against and impose liability on "governmental unit[s]." The Act's detailed descriptions of the contours of the waiver of immunity delineate the extent of the judicial authority. A plaintiff must begin, therefore, by alleging facts in the pleadings that fit within a provision of the Act that authorize a waiver. *Rattray*, 662 S.W.3d at 866.

The Act also provides various exceptions or caveats that function as a withdrawal of the waiver, and thus of the court's jurisdiction to proceed, under certain conditions. *Rattray*, 662 S.W.3d at 866. By way of example, some exceptions turn on the kind of defendant who is named, the legal theory that a plaintiff deploys, or certain kinds of legal

actions. *See, e.g.,* TEX. CIV. PRAC. & REM. CODE § 101.054; §§ 101.052-.053; § 101.0211, § 101.055(2); *see also Rattray*, 662 S.W.3d at 866. A plaintiff also has the burden to negate any potential exceptions to the waiver, and generally does so initially by alleging facts that bring a claim within the waiver. *Rattray*, 662 S.W.3d at 867. However, being "within" the waiver entails that a plaintiff satisfy the provisions that clearly and affirmatively waive immunity and also negate any provisions that create exceptions to, and thus withdraw, that waiver. *See id.*

The fundamental rule is that the court may not reach the merits if it finds a single valid basis to defeat jurisdiction. When one such ground exists, it is not necessary that every other potential jurisdictional defect be raised, fleshed out, or resolved at the outset. *Rattray*, 662 S.W.3d at 868-69.

**USE OR OPERATION OF MOTOR VEHICLE**

Rezac complains that the trial court erred by granting the plea to the jurisdiction because his pleadings and jurisdictional evidence properly raised an issue as to his injury being the result of water being sprayed from a hose attached to a fire truck by an employee of the college. Rezac argues that this demonstrates a waiver of immunity.

The college argues that, generally, the spraying of water through the hose did not constitute the "use" or "operation" of a motor vehicle for purposes of immunity. The college also argues that there was no evidence that Rezac's injury arose from the use or operation of a motor vehicle because the uncontroverted evidence established that the

water sprayed at Rezac flowed through the hose at hydrant pressure unaided by the pump's mechanism that was part of the fire truck.

The Tort Claims Act generally waives governmental immunity to the extent that liability "arises from the operation or use of a motor-driven vehicle or motor-driven equipment" or from "a condition or use of tangible personal or real property." TEX. CIV. PRAC. & REM. CODE § 101.021. The Act's waiver, however, is narrower for junior college districts, encompassing only tort claims involving the use or operation of motor vehicles and excluding the use or operation of motor-driven equipment. *Id.* § 101.051.

To satisfy Section 101.051(1) as it relates to this proceeding, the government employee must be actively engaged in "the operation or use of a motor-driven vehicle." *Id*. § 101.021(1)(A). The Supreme Court of Texas has said that courts must "strictly construe" the vehicle-use requirement, *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015) (per curiam), but has also cautioned that courts should not engage in overly technical constructions of "operation" or "use" that are contrary to "the everyday experience of driving." *PHI, Inc.*, 593 S.W.3d at 303. For a plaintiff to satisfy the vehicle-use requirement, "the government employee must have been actively operating the vehicle at the time of the accident," "the vehicle must have been used as a vehicle" and not for some other purpose, and "the tortious act alleged must relate to the defendant's operation of the vehicle rather than some other aspect of the defendant's conduct." *Ryder*, 453 S.W.3d at 927-28. In other words, the vehicle must be more than the mere setting for

the defendant's allegedly wrongful conduct. *Id*.

A fire truck is unquestionably a motor vehicle when it is being used as designed to transport equipment and firefighters to fires. This particular fire truck also has a pump housed within it to increase water pressure to assist with putting out a fire more quickly and efficiently. As used for the events of this day, the fire truck, after being driven to the event location, was parked and a hose was attached between the fire truck and a water hydrant. The fire truck's engine powers the pump by way of a device known as a power take-off, or PTO, which can either be engaged or turned on, thus running the pump to increase the water pressure, or remain turned off, which results in water flowing through the hoses connected to the truck at the same pressure as if the hose was connected directly to the hydrant, in essence hydrant pressure. The fire truck engine is very loud when in operation.

On the date in question, the PTO for the fire truck's pump was engaged, or turned on, by an employee of the college for a demonstration of firefighting techniques and turned off after the completion of the demonstration by that same employee. A different employee, standing a significant distance away from the fire truck, who had not operated the fire truck's engine or pump during the demonstration, sprayed the water from a hose connected to the fire truck during the taking of photographs which was part of the graduation proceeding. Rezac alleged that the second employee's use of the hose constituted the negligent use or operation of a motor vehicle.

Case law does not provide a clear answer to the question of whether or not Rezac's injury arose from the use or operation of a motor-driven vehicle. Some courts have found that waiver occurred in instances involving tools or instrumentalities attached to a motor vehicle. Examples include use of a lift for a wheelchair on a school bus (*El Paso v. Apodaca*, 346 S.W.3d 593 (Tex. App.—El Paso 2009, no pet.)), a rope attached to a truck to move a table tied to it (*Vidor Indep. Sch. Dist. v. Bentsen*, No. 09-04-401-CV, 2005 WL 1653873, 2005 Tex. App. LEXIS 5521 (Tex. App.—Beaumont July 14, 2005, no pet.)), an augur connected to a tractor for digging a post hole (*Lipan ISD v. Bigler*, 187 S.W.3d 747 (Tex. App.—Fort Worth 2006, pet. denied)), a fan under a seat on a bus (*Grand Prairie Indep. Sch. Dist. v. Castro*, No. 05-18-01415-CV, 2019 WL 2521724, 2019 Tex. App. LEXIS 5102 (Tex. App.—Dallas June 19, 2019, no pet.)), the failure to use a parking brake which allowed a van to roll into a helicopter (*PHI, Inc. v. Tex. Juvenile Justice Dep't*, 593 S.W.3d 296 (Tex. 2019)), and the use of a horn on a stopped bus (*Austin ISD v. Gutierrez*, 54 S.W.3d 860 (Tex. App.—Austin 2001, pet. denied)).

Conversely, waiver was not found to be established when a student hit her head on the frame of the rear door exit of a school bus (*LeLeaux v. Hamshire-Fannett ISD*, 835 S.W.2d 49 (Tex. 1992), and when passengers were injured while seated in a parked van on the side of the road while the driver left to get them lunch (*Tex. Dep't of Criminal Justice v. Mendoza*, No. 14-17-00117-CV, 2017 Tex. App. LEXIS 9015 (Tex. App.—Houston [14th Dist.] Sep. 26, 2017, no pet.). In these cases, the courts held that although a vehicle was

involved, the use or operation of the vehicle was not the cause of the injury.

**APPLICATION**

Thus, the resolution of the issue is not as easy as it first appears. The factual question the parties focused their attention upon was whether the fire truck's motor was running. The college argues they conclusively proved it was not. Rezac argues that he presented evidence that created a question of fact as to whether the motor was running or not.

On one end of the spectrum we have a pump. A pump has been determined to be motor-driven equipment. *See Tex. Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001). On the other end of the spectrum we have a vehicle for passenger transportation. No one disputes that when a fire truck is being driven down the street under its own power moving firefighters and equipment to a fire, that it is a motor-driven vehicle. The question for this appeal is whether something is always properly characterized as one or the other. We hold that it is not—the character of an item can, indeed it must, change based on how it is being used at the time the injury was caused. In this case, considering all the facts and allegations in the light most favorable to Rezac, the nonmovant, the fire truck was being used as nothing more than a pump at the time of the actions which resulted in Rezac's injury.

In this instance, because the fire truck was parked and attached to the hydrant, under the facts as alleged by Rezac, whatever use of the fire truck that then occurred was

not the use or operation of a motor-driven vehicle. At most, it was the use or operation of a pump, which under these facts would only potentially involve the use or operation of motor-driven equipment, for which immunity has not been waived because the college is a junior college district. *See Ryder*, 453 S.W.3d at 927 ("[T]he vehicle must have been used as a vehicle…"). We find that Rezac has not established a clear and unequivocal waiver of the college's governmental immunity under the Tort Claims Act. We overrule issue one.

## OTHER ISSUES

In Rezac's second issue, he complains that the trial court abused its discretion by failing to allow him to conduct discovery targeted at the jurisdictional issue, erroneously granted the plea to the jurisdiction solely on the evidence of interested witnesses who were employees of the college, and that Rezac's affidavit in response to the college's plea raised a genuine issue of material fact. In his third issue, Rezac complains that the trial court erred by refusing to allow him to replead to include an additional theory of liability.[2] In his fourth issue, Rezac complains that the trial court erred by sustaining the college's objections to Rezac's affidavit submitted with his response to the plea to the jurisdiction. Each of these issues becomes relevant only if the trial court erred by granting the plea to the jurisdiction as to whether Rezac established a waiver of governmental

---

[2] Rezac amended his petition once prior to the hearing on the plea to the jurisdiction to add an additional theory of recovery.

immunity or if, under the facts, he could assert facts or a basis under which it would be error to grant the plea to the jurisdiction. We find that, even by amending his pleadings as Rezac has requested, or by allowing him to conduct discovery as described in his brief to this Court, or by viewing his affidavit in its entirety even with the objected-to averments, Rezac would not be able to establish the use or operation of a motor vehicle sufficient to establish a waiver of governmental immunity as to the college. Additionally, amending his pleadings for a second time to add a claim that there was residual energy in the hose from the previous operation of a pump would not establish a waiver, because we have found that the operation of the pump of the fire truck did not constitute the use or operation of a motor vehicle, whether during the demonstration previously or at the time the water was sprayed into the side of Rezac's head. Therefore, the trial court did not abuse its discretion and each of these issues is overruled.

**CONCLUSION**

Having overruled each of Rezac's issues, we affirm the judgment of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Johnson,* and
     Justice Smith
(Justice Johnson concurs in the judgment only)
Affirmed
Opinion delivered and filed September 21, 2023
[CV06]

