**Brandi Hyde BROWN, Appellant,**

v.

**HOUSTON INDEPENDENT SCHOOL DISTRICT, Appellee.**

No. 14-02-00965-CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 18, 2003.

Valorie W. Davenport, Houston, for appellant.

David M. Feldman, Richard Willie Wilkinson, Houston, for appellee.

Panel consists of Justices YATES, HUDSON, and WANDE McKEE FOWLER.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellant sued the Houston Independent School District ("HISD") after she was sexually assaulted by an HISD police officer. The trial court held that HISD was entitled to governmental immunity and granted summary judgment in its favor. In a single point of error, appellant contends the officer's use of a patrol car brings her claim within an exception to governmental immunity under the Texas Tort Claims Act ("TTCA"). Because we find that appellant's injuries did not arise out of the use of the officer's patrol car, we conclude that this incident did not fall within an exception under the TTCA and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Viewing the evidence in the light most favorable to appellant, the facts are as follows. At approximately 3:00 a.m. on May 19, 1997, appellant was driving her truck in the Westheimer area of Houston. John Leo Nicholas ("Nicholas"), an on-duty HISD police officer, pulled behind appellant in his patrol car. He activated his emergency flashers and used the patrol car's bull horn to order appellant to stop. Appellant pulled her truck into a nearby parking lot.

Nicholas accused appellant of being drunk, which she denied. Nevertheless, Nicholas refused to allow appellant to leave the parking lot. Nicholas began making sexually suggestive comments and forced appellant to lift her shirt. Nicholas then ordered appellant to follow his patrol car with her truck. Nicholas led appellant to the Lamar High School parking lot, where he sexually assaulted her.

Appellant filed suit against HISD, alleging negligence and gross negligence arising from Nicholas's use of the patrol car and HISD's failure to supervise and monitor that use. HISD asserted the affirmative defense of governmental immunity, and moved for summary judgment on that ground. The trial court granted HISD's motion for summary judgment.

## ANALYSIS

In a single point of error, appellant contends the trial court erred in granting summary judgment for HISD because Nicholas's use of his patrol car brings her claim within an exception to governmental immunity under the TTCA. Appellant claims that this case falls within the exception to the TTCA because the rape would not have occurred had Nicholas not used the marked patrol car, including the emergency flashers, to force appellant to stop

her car. She claims also that the assault began with the initial stop when Nicholas forced appellant to bare her breasts then continued with the rape itself—after the officer forced her to follow him to another location.

The TTCA provides that a school district is liable for negligence of an employee acting within the scope of his employment if the injury "arises from the operation or use of a motor-driven vehicle...." Tex. Civ. Prac. & Rem.Code § 101.021; *see also id.* § 101.051. Despite the Texas Supreme Court's requests, the Legislature has not defined the term "use." *Tex. Dep't of Criminal Justice v. Miller,* 51 S.W.3d 583, 589 (Tex.2001). Therefore we apply the ordinary meaning of the term, "to put or bring into action or service; to employ for or apply to a given purpose." *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg,* 766 S.W.2d 208, 211 (Tex.1989). Recently, the Supreme Court has held that the use must have actually caused the injury. *Dallas Area Rapid Transit v. Whitley,* 104 S.W.3d 540 (Tex.2003); *Tex. Natural Res. Conservation Comm'n. v. White,* 46 S.W.3d 864, 869 (Tex.2001).

We have already addressed a very similar fact scenario involving an allegation that a rape by a police officer fell within the exemption to the TTCA. *See Holder v. Mellon Mortgage Co.,* 954 S.W.2d 786 (Tex.App.-Houston [14th Dist.] 1997), *rev'd on other grounds,* 5 S.W.3d 654 (Tex. 1999).[1] In *Holder,* a Houston police officer stopped a woman for an apparent traffic violation. *Id.* at 789. The officer ordered her to follow him to a parking garage, where he sexually assaulted her. *Id.* She sued the City of Houston, but the trial court granted summary judgment for the City based on governmental immunity. *Id.* at 790. We affirmed, holding the link between the use of the police car and the

injury was not sufficient to bring the claim within the TTCA's waiver of immunity. *Id.* at 807. We concluded:

> In this case, the use of the patrol car was not the "direct device" causing Holder's injury, and the "required causal nexus" for liability under the TTCA is missing. Instead, Holder was injured by Potter's intentional assault.

*Id.* Although the plaintiff in *Holder* did not claim that the injury arose out of the use of the patrol car and its lights, and claimed instead that it constituted a use of tangible personal property, the result is the same, as we discuss in more detail below.

Like we did in *Holder,* the Texas Supreme Court has required that the property used actually cause the injury. For example, an injury did not arise out of the use of medication when "[n]either the drugs nor the treatment afforded to Miller hurt him or made him worse, in and of themselves." *Tex. Dep't of Criminal Justice v. Miller,* 51 S.W.3d 583, 588 (Tex. 2001). Miller's widow had sued the Department of Criminal Justice alleging that the negligent use of medication and diagnostic equipment masked the symptoms of his meningitis. *Id.* at 587. The Court held that even though use of the medication "might have furnished the condition that made the injury possible," that use did not itself cause the injury. *Id.* at 588.

■ More recently, in *Dallas Area Rapid Transit v. Whitley,* the Supreme Court reiterated that a nexus must exist "between the operation or use of the motor-driven vehicle or equipment and a plaintiff's injuries." 104 S.W.3d at 543. The Court continued, "This nexus requires more than mere involvement of property." *Id.* And the Court finally said, "The [vehicle]'s use must have actually caused the

---

1. The issue of governmental immunity was   not appealed to the Texas Supreme Court.

injury." *Id.* (citing *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex.2001)). "Thus, as with the condition or use of property, the operation or use of a motor vehicle 'does not cause injury if it does no more than furnish the condition that makes the injury possible.'" *Id.* (quoting *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex.1998)).

This concept—that injuries do not arise out of the use of a vehicle when the vehicle itself did not cause the injury—is not new. The Beaumont Court of Appeals has held that the assault of passengers on a school bus did not arise out of the use of that bus. *Estate of Garza v. McAllen Indep. Sch. Dist.*, 613 S.W.2d 526, 528 (Tex.App.-Beaumont 1981, writ ref'd n.r.e) ("Trevino's knife and not the use of the bus was the cause of plaintiffs' damage.").

Courts have employed this same definition of "use" when dealing with insurance coverage questions as well as when dealing with the TTCA.[2] This court and the First District Court of Appeals have held that insurance coverage did not exist because injuries sustained in drive-by shootings did not arise out of the use of the vehicles. *See Le v. Farmers Tex. County Mut. Ins. Co.*, 936 S.W.2d 317, 321 (Tex.App.-Houston [1st Dist.] 1996, writ denied) ("The gun was the instrumentality that caused Tuan Le's injuries, not the car."); *Collier v. Employer's Nat'l Ins. Co.*, 861 S.W.2d 286, 289 (Tex.App.-Houston [14th Dist.] 1993, writ denied) ("The shotgun, not the uninsured vehicle, was the instrument that caused Collier's injury; therefore, we hold that the injuries did not arise out of the use of the uninsured vehicle.").

In spite of this line of cases in both the TTCA and the insurance arena, appellant cites us to a 1999 Texas Supreme Court case involving insurance coverage that she claims supports her position. *See Mid–Century Ins. Co. of Tex. v. Lindsey*, 997 S.W.2d 153 (Tex.1999). As with the drive-by shooting cases, *Mid–Century* involved insurance coverage, not the TTCA. *See id.* at 154. In *Mid–Century*, a nine-year-old boy tried to climb into his parent's locked truck through the truck's sliding rear window, which was slightly open. *Id.* While doing this, he accidentally touched a loaded shotgun resting in a gun rack mounted over the rear window. *Id.* The gun discharged, hitting Lindsay, who was sitting in a car parked next to the truck. *Id.* The Supreme Court held that the injury arose out of the use of a motor vehicle. *Id.* at 161–63. But in reaching that holding, the Court relied on a line of insurance coverage cases in which a gun was discharged in or from vehicles. *Id.* The Supreme Court pointed out that the majority of jurisdictions had found coverage—i.e. "use of a motor vehicle"—in a situation similar to *Mid–Century*. *Id.* In fact, the Court knew of only one "gun rack" case in which coverage was denied. *Id.* at 163. However, we believe *Mid–Century* may be of limited use outside the context in which it occurred. The accidental discharge of firearms has produced a whole body of case law in which insurance coverage was the issue. This body of law ultimately controlled—or at least directed—the outcome in *Mid–Century*. Regardless, one point was clear from the opinion—the Court adhered to earlier cases in which it found that an injury did not arise out of the use of the vehicle. For example, the Court

---

**2.** In these cases, the policies involved language similar to the TTCA. *See Le v. Farmers Tex. County Mut. Ins. Co.*, 936 S.W.2d 317, 320 (Tex.App.-Houston [1st Dist.] 1996, writ denied) ("arise out of the ownership, mainte-nance or use of the uninsured motor vehicle"); *Collier v. Employer's Nat'l Ins. Co.*, 861 S.W.2d 286, 290 ("arising out of the use of the uninsured motor vehicle").

repeated language from earlier opinions—one of which was a TTCA case—in which it had found that a vehicle was not used to cause an injury, but was merely the "locational setting" for the injury:

> The bus in this case was not in operation; it was parked, empty, with the motor off. The driver was not aboard; there were no students aboard. The bus was not "doing or performing a practical work"; it was not being "put or [brought] into action or service"; it was not being "employ[ed] or appl[ied] to a given purpose." The bus was nothing more than the place where Monica happened to injure herself.

*Id.* at 156 (quoting *LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51–52 (Tex.1992)).[3]

Likewise, the Court repeated language from a case in which it held that the accidental discharge in a moving vehicle of a firearm which struck a passenger in a van beside the truck did not invoke the truck insurer's duty to defend; the defendant was merely "using his truck as a truck" and the plaintiff failed to establish even a remote causal relationship between that use and the shooting. *Id.* at 156–57 (citing *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex.1997)). The Court reasoned that " 'the mere fact that an automobile is the situs of the accident is not enough to establish the necessary nexus between the use and the accident to warrant the conclusion that the accident resulted from such use.' " *Id.* at 157 (quoting *Nat'l Union*, 939 S.W.2d at 142).

◼ In addition to considering these cases, the Court discussed the "Appleman test," designed to assist a court / insurer /

insured in determining whether an injury arises out of the use of a motor vehicle for purposes of auto liability insurance coverage. *Id.* Although the Court noted some difficulty in applying the test and pointed out that it was not an absolute test, it still used the test.[4] *Id.* The test is as follows:

> For an injury to fall within the "use" coverage of an automobile policy (1) the accident must have arisen out of the inherent nature of the automobile, as such, (2) the accident must have arisen within the natural territorial limits of an automobile, and the actual use must not have terminated, (3) the automobile must not merely contribute to cause the condition which produces the injury, but must itself produce the injury.

*Id.* at 157 (quoting 2 Couch on Insurance 3d § 119.37, at 119–56 (1997); *accord* 6B John A. Appleman, Insurance Law and Practice (Buckley ed.) § 4317, at 367–69 (1979)).

◼ Applying the test to these facts crystalizes the problem with appellant's case and makes it clear the patrol car was not being "used" when Nicholas assaulted appellant. First, the injuries in this case did not occur within the territorial limits of the patrol car; instead, they occurred in appellant's truck and in the parking lot. Second, the patrol car did not itself produce the injury; Nicholas did. The patrol car only assisted Nicholas in accomplishing his unlawful purpose. Thus, *Mid–Century* does not have as far-reaching an impact on "use" cases as appellant wishes; it seems confined to the "gun discharge" category of cases. And, when we apply the Appleman test discussed in *Mid–Century*, it con-

---

**3.** Monica was injured when she stood up in the back of a school bus and hit her head. *LeLeaux,* 835 S.W.2d at 51.

**4.** We used the test in *Collier* to conclude a drive-by shooting was not a use of an automobile. *See Collier,* 861 S.W.2d at 289.

firms that appellant's injuries did not arise out of the use of the patrol car.

Finally, we feel it necessary to address briefly a case appellant relied on heavily at oral argument. *See Austin Indep. Sch. Dist. v. Gutierrez,* 54 S.W.3d 860 (Tex. App.-Austin 2001, pet. denied). In *Gutierrez,* a young girl was dropped off across the street from her home by her school bus. The bus driver honked the bus horn to signal to the girl that she could cross the street. However, when she crossed the street, she was hit by a car and killed. Finding that the injury arose out of the use of the bus, the *Gutierrez* court pointed out that the bus driver took "the affirmative action of honking the horn which may have contributed to the accident." *Id.* at 866. Or, to frame the finding in parlance the Supreme Court has recognized, the bus was much more than merely a locational setting where the injury occurred; a part of the bus—the bus's horn, to be exact—was used to actually cause the little girl's injuries and ultimate death. Here, no part of the patrol car was used to cause appellant's injuries. Thus, we find *Gutierrez* distinguishable.

In conclusion, considering the clear statements from the Supreme Court that the motor vehicle must have actually caused the injury, we are compelled to conclude that appellant failed to state a claim for which governmental immunity was waived under the TTCA, and overrule appellant's well-argued point. *See* TEX. CIV. PRAC. & REM.CODE §§ 101.021, 101.051.

The judgment of the trial court is affirmed.