CITY OF SUGARLAND, Appellant,

v.

James L. BALLARD, Appellee.

No. 01–04–00418–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 27, 2005.

Norman Ray Giles, William S. Helfand, Chamberlain, Hrdlicka, White, Williams, & Martin, Houston, for appellant.

Harold V. Dutton Jr., James S. Bowie II, Houston, for appellee.

Panel Consists of Justices TAFT, JENNINGS, and BLAND.

## OPINION

TIM TAFT, Justice.

Appellant, the City of Sugarland ("the City"), appeals from an order denying its plea to the jurisdiction on grounds of governmental immunity from suit in a wrongful-death suit brought by appellee, James L. Ballard ("Ballard"), individually and as representative of the estate of Mark Rus-

sell Ballard ("Mark"), deceased. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2004–2005). We first determine whether the Texas Tort Claims Act ("TTCA")[1] waives governmental immunity from suit for claims based on (1) officers' negligent failure to supervise Mark, who was their detainee, and (2) the City's negligent training and supervision of its officers, its ratification of negligent handling and detention procedures, and its policies. We next determine if the TTCA waives governmental immunity from suit for negligence in failing to secure a detainee properly within a patrol car, which failure allowed the detainee to escape and, during his flight, to be struck by an oncoming car. We reverse the order and remand the cause with an instruction to grant the City's jurisdictional plea.

### Standard of Review

■ "In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Dallas Area Rapid Transit v. Whitley,* 104 S.W.3d 540, 542 (Tex.2003). "To determine if the plaintiff has met that burden, 'we consider the facts alleged by the plaintiff and, to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties.'" *Id.* (quoting *Tex. Natural Res. Conservation Comm'n v. White,* 46 S.W.3d 864, 868 (Tex.2001)). "[I]f the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend." *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002). Because sovereign immunity from suit defeats a trial court's subject-matter jurisdiction, immunity from suit may properly be asserted in a jurisdictional plea. *See Tex. Dep't of Parks & Wild-*

---

1. TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.001– .109 (Vernon 1997 & Supp.2004–2005).

*life v. Miranda,* 133 S.W.3d 217, 225–26 (Tex.2004).

We review *de novo* a trial court's ruling on a jurisdictional plea, construing the pleadings in the plaintiff's favor and looking to the pleader's intent. *Id.* at 226; *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002). Whether the pleader has alleged facts that affirmatively demonstrate subject-matter jurisdiction is a legal question that we review *de novo. Miranda,* 133 S.W.3d at 226.

## Background

The parties submitted no evidence, and our facts thus come from Ballard's pleadings, viewed in light of his intent and construed liberally in favor of jurisdiction. *See, e.g., Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993); *IT–Davy,* 74 S.W.3d 849. On August 17, 2002, police officers of the City arrested Mark, a minor. The officers placed Mark in a police car, from which he tried to escape by kicking out the rear window. The officers then placed Mark in a second police car, but they failed to secure him adequately and, while Mark was "being transported," he escaped. After Mark escaped from the second police car, a private car struck and killed him "in the 16,900 block of Highway 59." The petition does not state, and no one presented evidence concerning, the second police car's location at the time of the escape, whether or how fast the car was then moving, or how soon Mark was struck after he escaped. Ballard's reply to the jurisdictional plea, however, alleged, without evidentiary support, that the second police car was moving at the time of the escape and that Mark was killed "immediately" upon exiting the patrol car.

Ballard sued the City, alleging that Mark had been killed because of the City's negligence. Ballard alleged three bases for liability. First, Ballard alleged that Mark died because of the police's negligent failure "to provide [for the] adequate care, well-being and safety of Mark" while he was in the second car. Second, Ballard alleged that the police misused unspecified tangible property.[2] Third, Ballard alleged that Mark's death resulted from the City's "failure to train and properly supervise its police officers"; that the City "permitted, encouraged, tolerated, and ratified a pattern and practice concerning the negligent processing, handling, detainment, security and transfer of juvenile offenders"; and that the officers' negligence was "the result of customs and policies" of the police department.[3] With respect to the third basis for liability, Ballard alleged that "[t]he foregoing acts, omission and systemic failures constitute a negligent implementation of policy." The City filed a jurisdictional plea as to each of Ballard's claims, which the trial court denied.

## Waiver of Governmental Immunity from Suit

■ Neither party disputes that the City performed a governmental function in committing the acts alleged to have been negligent. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(a)(1) (Vernon 1997) (defining municipality's governmental functions as including "police and fire protection and

---

2. Although the petition does not say so, the parties' appellate and trial briefing indicates that the second car's back door was unlocked.

3. Ballard's petition alleged that the actions underlying this third basis for liability constituted negligence. Nowhere did Ballard cite 42 U.S.C. § 1983 (2002) or claim that his constitutional or statutory rights had been violated; additionally, no one construed these allegations on appeal or below as anything but negligence.

control"). "A city's performance of a governmental function entitles it to immunity from suit brought by private parties for tort damages arising out of that function's performance, absent a waiver of that immunity from suit in, for example, the TTCA." *State v. City of Galveston*, No. 01–03–00557–CV, 2004 WL 2066448, at *1, 175 S.W.3d 1, 4 (Tex.App.-Houston [1st Dist.] Sept. 10, 2004, pet. filed) (citing TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.021, 101.0215(a), 101.025 (Vernon 1997 & Supp. 2004–2005)).

■ "Sovereign immunity to suit is waived and abolished to the extent of liability created by" the TTCA. TEX. CIV. PRAC. & REM.CODE ANN. § 101.025(a) (Vernon 1997). The TTCA provides, in turn, for the following waiver of liability:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 2003). The TTCA thus establishes liability, and creates waiver of immunity from suit, for certain damages (1) arising from operation of a motor-driven vehicle or motor-driven equipment ("the motor-vehicle waiver") and those (2) caused by a condition or use of tangible personal or real property ("the property waiver"). *See id.* The TTCA "provides a limited waiver of sovereign immunity" from suit. *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex.2001); *accord Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex.1998).

### A. Failure to Supervise

■ We construe Ballard's claim based on the officers' failure "to provide adequate care, well-being and safety of Mark" as a claim for failure to supervise Mark while he was in their custody. Such a claim does not fall within the express language of the TTCA's waiver provisions quoted above. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021. Indeed, courts have held that the TTCA does not waive immunity from suit for this type of claim.[4]

---

**4.** *See Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542–43 (Tex.2003) (holding that TTCA's motor-vehicle waiver did not apply to claim whose gravamen was that bus driver's "failure to supervise the public"—by, for example, failing to supervise tortfeasor passenger and failing to return to pick up victim passenger—allowed tortfeasor, who had threatened victim on bus, to assault victim after both had exited); *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex.1998) (holding that TTCA does not waive immunity from suit for claim whose substance is that patient's

death was caused by hospital staff's failure to restrain patient after having learned that he was suicidal); *Archibeque v. N. Tex. State Hosp.—Wichita Falls Campus*, 115 S.W.3d 154, 160 (Tex.App.-Fort Worth 2003, no pet.) (holding that claim for failure to monitor patient did not fall under TTCA's property waiver); *Austin Indep. Sch. Dist. v. Gutierrez*, 54 S.W.3d 860, 863 (Tex.App.-Austin 2001, pet. denied) ("If the [school bus driver's] act involved only supervision or control [of children passengers], immunity has not been waived, even if the act took place on or near the motor vehicle."); *Amador v. San Antonio*

## B. Negligent Training and Supervision of Officers, Ratified Pattern of Negligence, and "Customs and Policies"

■ None of Ballard's claims based on negligent training and supervision of officers, a ratified pattern of negligent handling and detainment of juvenile offenders by the City's police force, and the police force's "customs and policies" falls within the express language of the TTCA's waiver provisions quoted above. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.021. The TTCA thus does not waive immunity from suit for claims like these.[5] Moreover, with respect to any claim based on the police department's policy decisions, such claims are barred elsewhere in the TTCA. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.055 (Vernon 1997) ("This chapter does not apply to a claim arising: ... from the failure to provide or the method of providing police or fire protection."); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex.1995) (" 'Thus, if the negligence causing an injury lies in the formulating of policy—*i.e.*, the determining of the method of police protection to provide—the government remains immune from liability.' ") (quoting *State v. Terrell*, 588 S.W.2d 784, 787–88 (Tex.1979)).

Accordingly, we sustain the City's issue with respect to Ballard's claims based on negligent training and supervision of officers, for a ratified pattern of negligent handling and detainment of juvenile offenders by the City's police force, and for the City's "customs and policies."

## C. Negligent Failure to Secure Mark in the Second Police Car

Ballard asserted below, as he reasserts on appeal, that both the TTCA's motor-vehicle and its property waivers waived immunity from suit for his claim based on the negligent failure to secure Mark properly in the second patrol car.[6]

### 1. TTCA's Motor–Vehicle Waiver

■ For the motor-vehicle waiver to apply, Mark's death had to "arise[ ] from the operation or use of" the second police car. Tex. Civ. Prac. & Rem.Code Ann. § 101.021(1)(A). For the waiver to apply, a nexus must exist between the operation or use of the motor-driven vehicle and the plaintiff's injuries. *Whitley*, 104 S.W.3d at 543; *LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992). "This nexus requires more than mere involvement of property"[7] and has

*State Hosp.*, 993 S.W.2d 253, 256 (Tex.App.-San Antonio 1999, pet. denied) (holding that TTCA did not waive immunity for claim based on failure properly to evaluate and to restrain patient, who was assaulted by fellow patients after exiting unlocked door).

5. *See Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580–81 (Tex.2001) (holding that failure to furnish proper training, instruction, training manuals, and documents to officer who injured plaintiff; failure to provide adequate tests for that officer; and failure to discipline that officer fell outside TTCA's property waiver); *Norrell v. Gardendale Volunteer Fire Dep't*, 115 S.W.3d 114, 118 (Tex. App.-San Antonio 2003, no pet.) (concerning failure to train and to supervise employees whose negligence injured plaintiff); *Brown v.*

*Montgomery County Hosp. Dist.*, 905 S.W.2d 481, 484 (Tex.App.-Beaumont 1995, no writ) (concerning failure to supervise, to control, and to review treatment by doctor whose negligence injured plaintiff).

6. Again, the petition does not expressly allege this claim, but the parties' briefing here and below assumed that the petition did, and we liberally construe Mark's petition to include such an allegation. We also note that the petition did not expressly allege jurisdiction under the TTCA's motor-vehicle waiver, but we address this basis for waiver nonetheless because both parties addressed it here and below.

7. *Whitley*, 104 S.W.3d at 543.

been described as a "direct nexus."[8] Put another way, "'the [vehicle]'s use must have *actually caused* the injury.'" *Whitley,* 104 S.W.3d at 543 (quoting *White,* 46 S.W.3d at 869) (emphasis added). "Thus, as with the condition or use of property, the operation or use of a motor vehicle 'does not cause injury if it does no more than furnish the condition that makes the injury possible.'" *Id.* (quoting *Bossley,* 968 S.W.2d at 343).

Assuming without deciding that the failure properly to secure Mark within the car can be equated with the car's overall use to restrain and to transport him,[9] we hold that his injury did not arise from those uses. The actual cause of Mark's death was his deliberate decision to flee into freeway traffic and a separate car's hitting him there; the failure to secure Mark in the first place merely furnished the condition that made it possible for him to escape and then run into oncoming traffic. There is thus no "direct nexus" between the failure properly to secure Mark in the car and the impact causing his death.[10] *See City of Kemah v. Vela,* 149 S.W.3d 199, 204 (Tex.App.-Houston [14th Dist.] 2004, pet. denied) (holding that injury of plaintiff—who was detained in negligently parked patrol car that, along with another patrol car, was struck by third-party vehicle—did not arise out of use or operation of patrol car within meaning of TTCA's motor-vehicle waiver; rather, patrol car merely furnished condition that made injury possible); *compare Gutierrez,* 54 S.W.3d at 866 (holding that child's

---

**8.** *Ector County v. Breedlove,* No. 11–03–00356–CV, 2004 WL 2549146, at *2 (Tex. App.-Eastland Nov. 4, 2004, no pet. h.).

**9.** Within section 101.021(1)(A), "use" means "to put or [to] bring into action or service; to employ for or [to] apply to a given purpose," and "operation" means a "doing or performing of a practical work." *LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.,* 835 S.W.2d 49, 51 (Tex.1992) (quoting *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg,* 766 S.W.2d 208, 211 (Tex.1989)). Ballard does not explain how failing to secure a detainee *within* a vehicle constitutes the "put[ting] or bring[ing] into action" *of,* or the "doing or performing of a practical work" *with,* the vehicle itself. *See id. But cf. Finnigan v. Blanco County,* 670 S.W.2d 313, 316 (Tex. App.-Austin 1984, no writ) (holding that officer's exiting and leaving patrol car running beside jail, near jail escapee who then commandeered car, was use of vehicle within meaning of TTCA's motor-vehicle waiver). However, given our disposition, we need not decide the issue of use or operation.

**10.** We also note that at least one of our sister courts has, in determining the application of the TTCA's motor-vehicle waiver (TTCA: "property damage, personal injury, or death *arises from the ... use of* a motor-driven vehicle"), analogized to the test for determining uninsured-motorist coverage (policy: "lia-

bility ... must *arise out of the ... use of* the ... motor vehicle"). *See Brown v. Houston Indep. Sch. Dist.,* 123 S.W.3d 618, 622–23 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). The *Brown* court applied the coverage test from *Mid–Century Insurance Co. of Texas v. Lindsey,* 997 S.W.2d 153, 157 (Tex.1999); that test, although not absolute, provides that, for coverage to exist under the policy language quoted above, (1) the accident must have arisen out of the inherent nature of the automobile, as such; (2) the accident must have arisen within the automobile's territorial limits, and the actual use must not have terminated; and (3) the automobile must not merely contribute to cause the condition producing the injury, but must instead itself produce the injury. *Brown,* 123 S.W.3d at 622–23 (citing *Lindsey,* 997 S.W.2d at 157). We conclude that the *Lindsey* factors also show that Mark's death did not arise from the patrol car's use: the accident did not arise from the car's inherent nature, but instead from the failure to secure Mark properly, from Mark's decision to flee into freeway traffic, and from another car's hitting him; the accident occurred away from the police car; and the failure to secure Mark only contributed to his death because Mark's decision to run into oncoming traffic, plus the impact of a separate car, actually killed him.

death arose from use of motor vehicle when bus driver *honked horn to signal child to walk across street,* where she was hit by oncoming vehicle); *Hitchcock v. Garvin,* 738 S.W.2d 34, 37 (Tex.App.-Dallas 1987, no writ) (holding that child's injuries, incurred when she was struck by oncoming vehicle, arose from schoolbus driver's *failure to activate required warning signals to protect child* as she debarked bus).

## 2. TTCA's Property Waiver

 For the TTCA's property waiver to apply, a condition or use of tangible personal or real property must be involved. TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2). Within section 101.021(2), "use" means "to put or [to] bring into action or service; to employ for or [to] apply to a given purpose." *Miller,* 51 S.W.3d at 588. Claims involving the failure to use, or the non-use of property, do not fall within the TTCA's property waiver. *Id.* at 587; *White,* 46 S.W.3d at 869–70; *Kerrville State Hosp. v. Clark,* 923 S.W.2d 582, 584 (Tex.1996).

 Additionally, the personal injury or death must be "caused by" the condition or use of the property. TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2). Accordingly, the plaintiff must allege, among other things, that the property's use proximately caused the personal injury or death. *Bossley,* 968 S.W.2d at 342–43. Proximate cause consists of cause-in-fact and foreseeability. *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996). The test for cause-in-fact is whether the act or omission was a substantial factor in causing the injury, without which the harm would have not occurred. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex. 1995). To establish cause in fact, or "but for" causation, a party must show that the defendant's negligence was a substantial factor in bringing about his injury and was a factor without which no harm would have been incurred. *Excel Corp. v. Apodaca,* 81 S.W.3d 817, 820 (Tex.2002). " 'The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred.' " *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 776 (Tex.1995) (quoting *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 472 (Tex.1991)). The test for foreseeability is whether a person of ordinary intelligence would have anticipated the danger that his negligence created. *Id.* The TTCA's property waiver requires more than the property's mere involvement, and property does not cause injury if it does no more than furnish the condition making the injury possible. *Bossley,* 968 S.W.2d at 343. Accordingly, the TTCA's property waiver has been described as requiring a "direct nexus," [11] a "close causal relationship," [12] and "a direct and immediate relationship" [13] between the property's use and the injury or death.

---

11. *Breedlove,* 2004 WL 2549146, at *2 ("*Bossley* mandated that there be a *direct nexus* between the use of tangible personal or real property and the plaintiff's injury.") (emphasis added).

12. *Archibeque v. N. Tex. State Hosp.—Wichita Falls Campus,* 115 S.W.3d 154, 159 (Tex.

App.-Fort Worth 2003, no pet.); *Tex. Dep't of Mental Health & Mental Retardation v. Lee,* 38 S.W.3d 862, 867 (Tex.App.-Fort Worth 2001, pet. denied).

13. *Univ. of Tex. Med'l Branch at Galveston v. Hardy,* 2 S.W.3d 607, 609 (Tex.App.-Houston

Here, the failure to restrain Mark properly in the second patrol car is an allegation of non-use of property, for which the TTCA does not waive immunity from suit. *See López v. McMillion,* 113 S.W.3d 447, 450 (Tex.App.-San Antonio 2003, no pet.) (holding that claim based on failure to restrain inmate by handcuffing or shackling was allegation of non-use of property for which TTCA did not waive immunity); *Lacy v. Rusk State Hosp.,* 31 S.W.3d 625, 630 (Tex.App.-Tyler 2000, no pet.) (holding that failure to lock door, through which patient escaped and later drowned, was non-use of property, for which TTCA did not waive immunity). Because we hold that only a non-use of property was alleged, we need not reach the issue of causation.

We sustain the City's issue with respect to the negligence claim arising out of the failure to restrain Mark in the second patrol car.

### Conclusion

We reverse the order with respect to all of Ballard's claims, and we remand the cause with instructions for the trial court to grant the City's jurisdictional plea in its entirety.

[14th Dist.] 1999, pet. denied); *see Bossley,*

968 S.W.2d at 343.