Affirmed and Majority and Concurring and Dissenting Opinions filed July
21, 2009








Affirmed and
Majority and Concurring and Dissenting Opinions filed July 21, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-01006-CV

____________

 

MID-CONTINENT CASUALTY COMPANY,
Appellant

 

V.

 

GLOBAL ENERCOM MANAGEMENT, INC.,
Appellee

 



 

On Appeal from the 215th District
Court

Harris County, Texas

Trial Court Cause No. 2002-65400

 



 

C O N C U R RI N G  A N D   D I S S E N T I N G    O P I N I O N








Allstates Construction Company (AAllstates@) was the named
insured on a Comprehensive General Liability policy(ACGL@) and a Commercial
Auto Policy (ACAP@) issued by Mid-Continent Casualty
Company.  Allstates entered into a contract with Global Enercom Management,
Inc. (AGEM@) to replace guy
wires on a cellular phone tower. Allstates employees rigged a pulley and rope
system in preparation to ascend a tower, knowing that the source of power would
be a pick-up truck operated by another employee.  Another Allstates employee
attached the rope to eye-hooks on the truck=s front bumper,
and after receiving hand signals from fellow employees, knowingly and
intentionally used the truck to lift the three Allstates employees high inside
the tower.  The following designed and engineered features of the truck were
employed to lift Allstates employees high inside the tower: (1) bumper or frame
with eye-hooks (2) steering wheel (3) engine (4) gears (5) wheels (6) brakes. 
The tension in the rope created by power from the truck engine, the weight of
three employees, and other factors, caused the rope to break. 

The
majority opines that Exclusion g does not preclude coverage because Athe workers= deaths did not arise out of the use
of a motor vehicle.@  Referring to the causation requirement of the
arise-out-of-use test outlined in Mid-Century Ins. Co v. Lindsey, 997
S.W.2d 153, 157 (Tex. 1999), the majority concludes that Athe pick-up truck simply provided the
power for the pulley system@ and that it was Athe defective rope@ that caused the workers= deaths.  I respectfully dissent
because I disagree with the majority=s causation analysis and disposition
of Mid-Continent=s first issue.

This court=s determination of whether liability
coverage is excluded under the CGL turns our interpretation of all the language
in  Exclusion g, found in Section I, Part 2 of the policy.       

   This
insurance does not apply to:

    Exclusion
g:

ABodily injury@ or Aproperty damage@ arising out of the ownership,
maintenance, use or entrustment to others of any aircraft, Aauto@ or watercraft owned or operated by
or rented or loaned to any insured.  Use includes operation and Aloading or unloading@.








First,
the majority fails to incorporate all of the Exclusion g in its interpretation
of the policy.  To Aarise out of@ simply means that
a causal connection or relation exists between the accident or injury and the
use of the motor vehicle.  Mid-Century Ins. Co., 997 S. W. 2d at 156 (Tex. 1999).  In other words,
whether an injury arises out of the use of a motor vehicle is determined by a Abut for@ test, not direct
or proximate cause. Utica Nat. Ins. Co. v. American Indemnity Co., 141
S. W. 3d 198, 202 (Tex. 2004); McCarthy Bros. Co. v. Cont=l Lloyds Ins. Co., 7 S.W. 3d 725,
730 (Tex. App.BAustin 1999, no pet.); see also Admiral Ins. Co. v.
Trident NGL, Inc., 988 S.W. 2d 451, 454 (Tex. App.BHouston [1st
Dist.] 1999, pet denied). 
By stating that Athe pick-up truck simply provided the power for the pulley
system@ and that it was the Adefective rope@ that caused the injury, the majority
ignores the above authority and disposes of this insurance coverage issue with
a bare conclusion that the broken rope implicitly eliminates operation or use
of the pick-up truck as a producing cause of the occurrence.








In
interpreting the insurance policy, relative to the third requirement in Lindsey,
I would employ traditional tort law doctrines that pertain to causation.
Proximate cause means that cause which, in a natural and continuous sequence,
produces an event, and without which cause such event would not have occurred. 
In order to be a proximate cause, the act or omission complained of must be
such that a person using ordinary care would have foreseen that the event, or
some similar event, might reasonably result therefrom.  There may be more
than one proximate cause of an event.  See Texas Pattern Jury
Charge; General Negligence PJC 2.4 (2003) (emphasis added).  Producing cause in
the context of compensation for employee injuries means: Athat cause which, in a natural and
continuous sequence, produces the death, and without which death would not have
occurred.@  Jones v. Traders & General Ins. Co., 169 S.W. 2d 160, 162
(Tex. 1943).  Producing cause in the context of products liability means Aan efficient, exciting, or
contributing cause, which in a natural sequence, produced injuries or damages
complained of, if any.  There can be one or more than one producing cause.@  Rourke v. Garza 530 S. W. 2d
794, 801(Tex. 1975).  See also Texas Pattern Jury Charge; DTPA/Insurance
Code PJC 102.1, 102.7, 102.8 (2003).   Considering this traditional definition
of Aproducing cause@ which denotes or implicates multiple
causes, the phrase Amust itself produce the injury@ is difficult to interpret and
apply.  However, as explained below, the majority=s implicit conclusion that the
pick-up did not Aitself produce@ the injuries and deaths is not supported by the supreme
court=s analysis and disposition of the
coverage issue in Lindsey.  

The
majority fails to explain the difference between  Acontributing to the condition which
causes the injury,@ as compared to Amust itself produce the injury.@ Here, the underlying summary judgment
evidence militates the following conclusion: but for negligent operation or use
of the truck, negligence of the deceased employees, and defects in the rope, if
any, the accident would not have occurred.  Accordingly, I would hold that the
injuries and deaths arose-out-of Ause@ of the pick-up truck.[1] 








Second,
I disagree with the majority=s application of case precedent.  The majority suggests the
result in this case is controlled by Brown v. H.I.S.D., 123 S.W.3d 618
(Tex. App.CHouston [14th Dist.] 2003, pet. denied), the line of drive-by shooting
cases distinguished by the Supreme Court in Lindsey, and National
Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.,
939 S.W.2d 139 (Tex. 1997). In Brown, the victim was raped inside her
own vehicle, not the offending officer=s patrol car.  Officer Nicholas used
his patrol car to stop the victim, then instructed her to drive onto the
parking lot where he committed the assault.  From these facts, the court
concluded that the Apatrol car was not being >used= when Nicholas assaulted appellant.@  Brown, 123 S.W.3d at 622.
The court further concluded that the Apatrol car did not itself produce the
injury, but only assisted the officer in accomplishing his unlawful purpose.@  Id. at 622-623.   The
vehicle was involved in the assault, but its use did not cause the injury.  See
id.  Here, unlike the patrol car in Brown, it is judicially admitted
that the pick-up truck was in Ause@ when the accident occurred.  Additionally, use of the
pick-up truck was beyond Amere involvement.@ The operator or driver of the
pick-up truck played a direct role in the chain of events that led to the
workers= deaths.  Thus, Brown does not
determine the result in this case.

In Lindsey,
the court distinguished the intentional tort drive-by shooting cases from other
cases in which there is a nexus between the injury and the use or operation of
an automobile, concluding that such shootings do not arise out of the use of
the vehicle.  Lindsey,  997 S.W. 2d at 157-164.  As the majority notes, a
vehicle=s use during a
drive-by shooting is only incidental to the cause of the injury because Athe shooter could
be standing still and accomplish the same result.@  Id. at
158.  The third requirement of the arising-out-of-use test could not be
satisfied because the Avehicle is the mere situs@ of a shooting
that Ahas nothing to do
with the use of the vehicle.@  Id.   Here, the majority fails to
acknowledge that the pick-up truck was operated in such a manner as to create
the chain of causation. Without the pick-up truck, the workers would not have
been pulled high into the tower, and there would not have been tension on the
rope.  The pick-up truck could not have been Astanding still and
accomplished the same result.@  Id.  Consequently, I disagree
with the majority=s assertion that the supreme court=s reasoning
relative to the drive-by shooting cases determines the result in this case.








In Merchants, the
driver of a truck negligently fired a gun while driving, killing the passenger
of a car traveling next to him.  The court held that Aa causal relationship between the
injury and the use of the auto is essential to recovery.@  Merchants, 939 S.W.2d at
142.  The truck in Merchants was Athe mere situs@ of an accident which did not result
from the use of the truck.  Id.  The majority attempts to conform the
facts of this case to the facts of Merchant by stating that the accident
was the result of the rope breaking and not the use of the truck.  However,
nothing in Merchant showed that the use of the truck had anything to do
with the driver=s negligent firing of the gun.  In this case, it is clear
that the truck was operated or used in a manner calculated to cause tension in
the rope. There is an obvious Anexus between the use and the accident to warrant the
conclusion that the accident resulted from such use.@ See id.

I
respectfully submit that this court should not reject the supreme court=s analysis and application of law to
fact in Lindsey.  Metzger, a young lad,  attempted to enter a locked truck by
climbing through the back window.  While crawling into the truck, he dislodged
a gun from a rack and caused it to discharge.  Applying the third Lindsey factor, the court
concluded: AAwe think on balance the Metzer truck Aproduced@-to use the factor=s word-the injury.@@  The court then stated very clearly,
A[s]urely if the movement of the truck
had caused the shotgun to discharge, there would be little question that the
vehicle produced the injury.@  Lindsey, 997 S.W.2d at 158.  Similarly, in this
case, it was movement or operation of the truck that created tension on the
rope, resulting in the accident.  The rope that tragically broke was directly
connected to and affected by movement of the pick-up truck Here, the chain of
causation that flows directly from Ause@ of the Allstates pick-up far
surpasses Metzger=s attenuated Ause.@ The Metzger boy was simply attempting to enter a locked
truck. The supreme court concluded that he was using the truck, as contemplated
by the same language in Exclusion g. A fortiori, the causal relationship
between operation of the Allstates truck and the deaths, satisfies the Ause@requirement of Exclusion g.








Third,
the majority concludes that the CGL policy provides coverage for the incident
if operation of the pick-up merely Acontributed to@ rather that Aitself produce@ the injuries and deaths.  Under the
majority=s holdings, there is coverage under
the CGL and the CAP for same occurrence. This result is inconsistent with other
authority involving concurrent causation. In cases involving concurrent
causation, the excluded and covered events combine to cause the plaintiff=s injuries.  If the two causes cannot
be separated, the exclusion is triggered. Utica, 141 S. W. 3d at
204.  Considering the undisputed summary judgment evidence and GEM=s judicial
admissions, an inseparable chain of causation which included operation or use
of the Allstates pick-up truck combined to cause the injuries and deaths.  Accordingly, applying the plain
language in Exclusion g, and the supreme court=s analysis in Lindsey, there
is no coverage under the CGL for the occurrence in question.

In
conclusion, I would reverse the trial court=s summary judgment that Mid-Continent=s CGL policy provides liability
coverage for the underlying claims, and hold that coverage is precluded under
the plain language in Exclusion g.  Accordingly, I respectfully dissent to that
portion of the majority opinion dealing with Mid-Continent=s first issue.  I concur in the
result only with respect to the majority=s disposition of Mid-Continent=s second issue pertaining to the
execution requirement for Ainsured contracts@ in both policies.                      

 

 

/s/        Charles W. Seymore

Justice

 

Panel consists of Chief
Justice Hedges and Justices Anderson and Seymore.  (Anderson, J., majority).
(Seymore J. Dissenting, in part and Concurring, in part).

 

 

 

 









[1]  Any fact issue relative to use or operation of the
pick-up truck was eliminated by GEM=s

replies
to Mid-Continent=s requests for admissions numbered 12 and 13.  GEM
judicially admitted that a motor vehicle was Abeing used@ or Ain operation@ at the time of the accident. See Tex. R. Civ. Pro. 198.